# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

STEPHEN U.,
Plaintiff Below, Petitioner

**v.) No. 25-ICA-56** (Cir. Ct. of Kanawha Cnty. Case No. CC-20-2020-C-783)

CAREN J. and
CHARLESTON AREA MEDICAL CENTER HEALTH SYSTEM, INC.,
Defendants Below, Respondents

and

STEPHEN U., individually and on behalf
of his minor children, Z.U. and L.U.,
Plaintiffs Below, Petitioners

**v.) No. 25-ICA-57**   (Cir. Ct. of Kanawha Cnty. Case No. CC-20-2018-C-1356)

CHARLESTON AREA MEDICAL CENTER HEALTH SYSTEM, INC.,
Defendant/Third-Party Plaintiff Below, Respondent

and

CAREN J.,
Third-Party Defendant Below, Respondent

**FILED**
**August 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In this consolidated appeal from the Circuit Court of Kanawha County, Petitioner Stephen U.[1] appeals multiple orders. In Case Number 25-ICA-57, petitioner appeals two orders. The first is the March 4, 2022, order granting summary judgment in favor of Respondent Charleston Area Medical Center Health System, Inc. ("CAMC"). The second is the January 31, 2025, order denying petitioner's motion to alter or amend the summary judgment ruling pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. In

---

[1] Consistent with the Supreme Court of Appeals of West Virginia's long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Case Number 25-ICA-56, petitioner challenges the January 31, 2025, order dismissing petitioner's separate complaint against Respondent Caren J. and CAMC pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure. CAMC filed separate responses in each case.[2] Caren J. did not participate in either appeal. Petitioner filed a reply in both cases.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

From the outset, we note that this appeal is yet another attempt by petitioner to divest Caren J. of her status as mother of petitioner's children based on the unrelenting assertion that petitioner is the biological mother of the children, and that Caren J. is merely a gestational surrogate who was improperly designated as the children's mother on their birth certificates pursuant to West Virginia Code § 16-5-10(e) (2006).[3] Because the history of the parties and their children has been thoroughly addressed in prior decisions of the Supreme Court of Appeals of West Virginia ("SCAWV"), a recitation of the facts is unnecessary.

These matters were first addressed by the SCAWV in *S.U. v. C.J.* ("*S.U. I*"), No. 18-0566, 2019 WL 5692550 (W. Va. Nov. 4, 2019) (memorandum decision) wherein the SCAWV affirmed the Family Court of Mason County's determination that the purported gestational surrogacy agreement was unenforceable, Caren J. is the legal mother of the children, and it was in the children's best interest to remain in her primary custody. *Id.* at *5. In *S.U. I*, the SCAWV also specifically found: "Our review of the record uncovers no error. . . . Succinctly stated, [petitioner] failed to submit competent evidence to overcome the presumption set forth in West Virginia Code § 16-5-10(e) that 'the woman who gives birth to the child is presumed to be the mother[.]'" *Id.* at *4.

---

[2] In both appeals, petitioner is self-represented. CAMC is represented by Rita Massie Biser, Esq., Moore & Biser, PLLC.

[3] West Virginia Code § 16-5-10(e) states: "For the purposes of birth registration, the woman who gives birth to the child is presumed to be the mother, unless otherwise specifically provided by state law or determined by a court of competent jurisdiction prior to the filing of the certificate of birth." Further, we note that although this provision was not substantively affected by the recent amendments to West Virginia Code § 16-5-10 (2024), we refer to the former version of the statute because it was in effect at the time the birth certificates were issued.

2

Since *S.U. I*, petitioner has relitigated those issues in subsequent litigation and appeals. However, those attempts have been soundly rejected by the SCAWV, often on res judicata grounds. *See S.U. v. C.J.* ("*S.U. II*"), No. 19-1181, 2021 WL 365824 (W. Va. Feb. 2, 2021) (memorandum decision); *In re Adoption of E.U., L.U.-1, and L.U.-2* ("*Adoption I*"), No. 20-0039, 2021 WL 4935772 (W. Va. Oct. 13, 2021) (memorandum decision); *In re The Children of: S.U. v. C.J.* ("*S.U. III*"), Nos. 20-0515, 20-0516, 20-0612, and 20-0710, 2021 WL 4936476 (W. Va. Oct. 13, 2021) (memorandum decision); *In re Adoption of E.U., L.U.-1, and L.U.-2* ("*Adoption II*"), No. 21-0165, 2022 WL 293352 (W. Va. Feb. 1, 2022) (memorandum decision); *In re S.U.* ("*S.U. IV*"), No. 21-0258, 2022 WL 1556113 (W. Va. May 17, 2022) (memorandum decision); *see also S.U. v. Cent. Atl. Legal Grp.*, No. 20-1006, 2022 WL 293551 (W. Va. Feb. 1, 2022) (memorandum decision) (affirming circuit court's determination that petitioner is a vexatious litigant based upon petitioner's repeated attempts to relitigate issues involving C.J. and the children, including suing the law firm representing C.J. and raising the same arguments regarding surrogacy and the birth certificates); *S.U. v. C.J.* ("*S.U. V*"), No. 21-0322, 2022 WL 3905107 (W. Va. Aug. 30, 2022) (memorandum decision) (affirming the lower court's imposition of prefiling injunction against petitioner); *S.U. v. Cent. Atl. Legal Grp.*, No. 22-0441, 2023 WL 6862166 (W. Va. Oct. 18, 2023) (memorandum decision) (affirming circuit court's imposition of attorney's fees and costs against petitioner based upon vexatious conduct). Moreover, petitioner was recently unsuccessful in multiple attempts to raise the same issues before this Court. *See Stephen U. v. State*, No. 24-ICA-326, 2025 WL 1249486 (W. Va. Ct. App. Apr. 29, 2025) (memorandum decision) (concluding that petitioner's claims were barred by the doctrine of res judicata); *Stephen U. v. Caren J.*, No. 24-ICA-506, 2025 WL 1604142 (W. Va. Ct. App. June 6, 2025) (memorandum decision) (affirming the circuit court's dismissal of petitioner's complaint on res judicata and collateral estoppel grounds).

In its rulings on petitioner's subsequent appeals, the SCAWV has reiterated two important rulings from *S.U. I*: "The first is that there was never a valid, enforceable gestational surrogacy agreement between petitioner and respondent . . . The second is that respondent is the legal mother of all four children." *S.U. III*, 2021 WL 4936476, at *1 (citations and quotations omitted); *Adoption II*, 2022 WL 293352, at *1 (citations and quotations omitted); *S.U. V*, 2022 WL 3905107, at *1 (citations and quotations omitted); *see also S.U. IV*, 2022 WL 1556113, at * 1 ("Further, we have stressed that respondent 'is the legal mother of all four children.'") (citations omitted).

With this backdrop in mind, we turn to the present appeal.

**The 2018 Case (25-ICA-57)**

On October 28, 2016, Caren J. gave birth to twins, Z.U. and L.U. at CAMC. In accordance with West Virginia Code § 16-5-10 (2006), CAMC submitted a "Mother's Worksheet for Child's Birth Certificate" for each child to the vital statistics section in the Bureau for Public Health for issuance of the children's birth certificates ("Worksheets").

The Worksheets identified Caren J. as the children's mother and petitioner as the children's father. The children's birth certificates were issued with these designations.

On October 25, 2018, petitioner sued CAMC in circuit court based upon events surrounding the children's birth and CAMC's submission of the Worksheets for the issuance of the children's birth certificates. Factually, the complaint alleged that pursuant to a surrogacy agreement, Caren J. was only a gestational surrogate, petitioner was the biological mother of the children, and petitioner would assume custody of the children after their births. It was alleged that prior to the birth of the children, petitioner provided CAMC with a copy of the documents, along with additional documentation, which petitioner claimed established Caren J.'s status as a surrogate and petitioner's status as the biological mother.

Petitioner's complaint asserted six causes of action against CAMC. It alleged the tort of intentional infliction of emotional distress ("IIED"), based upon CAMC allegedly depriving petitioner of custody of the children and placing them with a biological stranger. A claim was asserted that CAMC had interfered with petitioner's and Caren J.'s existing surrogacy contract, and that the resulting interference had deprived petitioner of custody of the children. Petitioner also asserted a claim for interference with custody, alleging that despite having prior knowledge of Caren J.'s status as a gestational surrogate and the surrogacy contract, CAMC prevented petitioner from taking custody of the children. Each of these three causes of action was accompanied by separate claims for punitive damages.

On September 27, 2019, CAMC filed a third-party complaint naming Caren J. as a third-party defendant. The third-party complaint alleged fraudulent misrepresentation, negligent misrepresentation, and implied indemnification. CAMC also requested an assessment of comparative fault pursuant to West Virginia Code § 55-7-13a (2015). On June 27, 2019, the circuit court entered a scheduling order setting forth deadlines for the parties regarding certain aspects of the litigation such as discovery, filing and responding to pretrial motions, and filing pretrial memoranda. The scheduling order also set a pretrial conference hearing for September 29, 2020.

On January 14, 2020, petitioner filed a motion to stay the case, claiming the inability to comply with the deadlines of the scheduling order because *S.U. I* was pending before the SCAWV, and that the case might also be reviewed by the United States Supreme Court. Petitioner filed an identical second motion on September 8, 2020.

CAMC filed a response in opposition to the second motion on September 22, 2020. The response noted that at the time petitioner filed that motion, there was no case pending before the SCAWV because it had issued its decision in *S.U. I* on November 4, 2019, and there was no evidence that a petition for writ of certiorari had been filed, let alone accepted by the United States Supreme Court. CAMC further contended that because *S.U. I* determined that there was no enforceable surrogacy or custody agreement between

4

petitioner and Caren J., and that she was legal mother of the children, those determinations were dispositive of the claims raised in petitioner's complaint.

On this same day, CAMC filed its motion for summary judgment, which argued, among other things, that *S.U. I* was dispositive of petitioner's claims in this case. CAMC's pretrial memorandum was filed on September 28, 2020. Petitioner did not file a response to CAMC's motion for summary judgment, nor did petitioner file a pretrial memorandum.

On September 29, 2020, the day of the pretrial hearing, petitioner filed a "Notice of Active Litigation and Motion for Abeyance of Proceedings." In this pleading, petitioner contended that CAMC's actions were negligent and felonious, resulting in significant damages. It was also asserted that weeks prior, petitioner had filed a second civil action against CAMC and Caren J. (25-ICA-56). It was stated that this second action was based upon the same series of events and raised causes of action which paralleled the present case, and that the matter was pending before the same court. Petitioner posited that the cases should be consolidated as no scheduling order had been entered in the newest case. The court held the pretrial conference as scheduled. According to the parties' briefs, the circuit court orally granted CAMC's motion for summary judgment at that hearing.

Eventually, the court's ruling was memorialized in a summary judgment order entered on March 4, 2022. The summary judgment order made several findings of fact and conclusions of law. With respect to this appeal, the circuit court's most significant finding was its determination that the SCAWV's decision in *S.U. I* collaterally estopped petitioner from pursuing the claims in the underlying complaint. To that end, the circuit court noted that *S.U. I* determined that the purported custody agreement is invalid and unenforceable, petitioner had failed to rebut the presumption of maternity pursuant to West Virginia Code §16-5-10(e), Caren J. is the legal mother of the children, she is properly designated as their mother on the birth certificates, and was designated as the children's primary residential and custodial parent. The circuit court also found that since *S.U. I*, petitioner has filed numerous lawsuits against Caren J. and others, which presiding courts have rejected because those cases all sought to relitigate the matters decided by *S.U. I*. Significantly, the court found that petitioner's complaint against CAMC was another attempt to collaterally attack *S.U. I* because the claims were dependent upon the surrogacy agreement being valid and enforceable.

Additionally, the circuit court concluded that petitioner had failed to establish the existence of any duty owed by CAMC, and the evidence showed that CAMC complied with the statutory requirements of West Virginia Code § 16-5-10. The court also found that petitioner's IIED claim could not survive summary judgment because petitioner could not satisfy each element of the tort. *See* Syl. Pts. 3 and 4, *Travis v. Alcon Lab'ys, Inc.*, 202 W. Va. 369, 504 S.E.2d 419 (1998). Petitioner could not seek both compensatory and punitive damages for the IIED claim because petitioner failed to allege or make a requisite showing of physical trauma, or provide medical or psychiatric proof of emotional or mental trauma

as a result of CAMC's alleged conduct. Syl. Pt. 14, in part, *Tudor v. Charleston Area Med. Ctr., Inc.*, 203 W. Va. 111, 506 S.E.2d 554 (1997). Moreover, the circuit court determined that petitioner's remaining causes of action for punitive damages failed because state law does not recognize independent causes of action for punitive damages.

Following entry of the summary judgment order, petitioner timely filed a motion to alter or amend the judgment on March 14, 2022. *See* W. Va. R. Civ. P. 59(e). In the motion, petitioner claimed that the court's ruling was contrary to law as the evidence shows Caren J. was a gestational surrogate and that petitioner was deprived of the constitutional right to custody of the children as their biological parent; petitioner was denied due process because the court never ruled upon petitioner's motions for a stay or abeyance of the proceedings; and that petitioner was further denied due process because CAMC's motion for summary judgment was not filed at least ten days prior to the September 29, 2020, pretrial hearing. Petitioner also claimed that the circuit court impermissibly converted the pretrial hearing to a hearing on the motion for summary judgment.

After filing the motion, neither the parties, nor the court took any action for nearly three years until petitioner filed a renewed motion on January 14, 2025. Thereafter, the circuit court entered an order on January 31, 2025, which reaffirmed its summary judgment ruling and denied the motion.

**The 2020 Case (25-ICA-56)**

On September 10, 2020, petitioner filed a new complaint against Caren J. and CAMC in the same circuit court. The complaint acknowledged the pendency and nature of the 2018 case, and alleged facts that mirrored those alleged in the other case. The complaint alleged that Caren J. and CAMC committed acts of fraud, negligence, and the IIED. The complaint also sought a declaratory judgment that the children's Worksheets contained information that Caren J. and CAMC knew to be false. In other words, petitioner sought the removal of Caren J. as the children's mother on the birth certificates.

On October 15, 2020, CAMC filed a motion to dismiss, alleging that the summary judgment order entered in the 2018 case, as well as prior decisions by SCAWV in *S.U. I* and its progeny precluded the 2020 complaint. No action was taken by the circuit court on the motion to dismiss and the case went dormant.

On September 17, 2024, the circuit court entered its notice of intent to dismiss the case for inactivity pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure.[4]

---

[4] At the time the circuit court issued its notice of intent to dismiss, the court's proceedings were governed by the version of Rule 41 adopted by the Supreme Court of Appeals of West Virginia in 1998. While Rule 41 was amended by the Court, effective January 1, 2025, no changes were made that affect this appeal.

On September 23, 2024, petitioner filed a response objecting to dismissal. The response alleged that this case contained different causes of actions from the 2018 case, and that the causes of action in this case were not discovered until after the first case was filed and pending. Petitioner contended that at the 2018 case's pretrial hearing on September 29, 2020, the court indicated that it was going to grant summary judgment in the 2018 case and dismiss the 2020 case. However, when the written order was entered on March 4, 2022, it made no mention of the 2020 case, and the 2020 case had no scheduling order. Petitioner further contended that the inactivity in this case was due to waiting on the summary judgment order in the 2018 case. Petitioner requested entry of a scheduling order and for the case to be decided on the merits.

Subsequently, the parties filed other motions in the case; however by order entered January 3, 2025, the court stayed consideration of all those motions and further proceedings until the Rule 41(b) matter had been ruled upon.

On January 31, 2025, the circuit court entered its order dismissing the action pursuant to Rule 41(b). The order noted the court's consideration of the record and petitioner's filed objection before finding that petitioner had failed to establish good cause for delaying the prosecution of the case for nearly four years. The court also denied the stayed motions as untimely. This appeal followed.

Our review of petitioner's challenges to the orders on appeal requires the application of different standards of review. In Case Number 25-ICA-57, petitioner challenges the circuit court's entry of summary judgment and subsequent denial of petitioner's motion to alter or amend. Concerning those orders, our standard of review is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998) ("The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.").

We begin our analysis by noting that while petitioner's notice of appeal includes the January 31, 2025, order denying the motion to alter or amend, petitioner's brief offers no assignment of error or argument directly challenging that ruling. As such, we deem any challenge to the court's ruling on that motion to be waived. Instead, petitioner's lone assignment of error is that the circuit court erred by granting summary judgment. With respect to this assignment of error, petitioner presents arguments challenging the summary judgment ruling both substantively and procedurally.

Substantively, petitioner argues that the circuit court erred in its dismissal of petitioner's claims that CAMC interfered with the surrogacy contract and petitioner's right to custody of the children; erred by finding that petitioner had failed to rebut the

7

presumption of maternity pursuant to West Virginia Code § 16-5-10(e); and erred in dismissing the IIED claims for compensatory and punitive damages. We are unpersuaded by these arguments.

It is well established in West Virginia that "[s]ummary judgment is appropriate if, from the totality of the evidence presented . . . the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). "[T]he party opposing summary judgment must satisfy the burden of proof by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor." *Id.* at 60, 459 S.E.2d at 337 (quotations and citations omitted). Further, Rule 56(e) of West Virginia Rules of Civil Procedure (1998)[5] states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

As we previously observed, petitioner did not file a response in opposition to CAMC's motion for summary judgment. Petitioner also did not include the transcript from the September 29, 2020, pretrial hearing in the appendix record. Thus, there has been no showing made to this Court that petitioner raised these arguments before the circuit court or otherwise preserved any objection regarding the summary judgment ruling for review on appeal.

Similarly, petitioner's Rule 59(e) motion does not preserve these issues for appeal. Rather, as explained by this Court in *Moschonas v. Charles Town General Hospital*, 251 W. Va. 306, 912 S.E.2d 299 (Ct. App. 2025), decisions of this Court and the SCAWV have addressed this issue as follows:

> Neither Rule 59(e) nor Rule 60(b) are appropriate for presenting new legal theories, arguments or claims that could have been raised previously. *Tice v. Veach*, 250 W. Va. 482, 495, 904 S.E.2d 484, 496 (Ct. App. 2024); *see also Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 56, 717 S.E.2d 235, 243 (2011) ("A motion under Rule 59(e) is not appropriate for presenting

---

[5] The circuit court's proceedings were governed by the version of Rule 56 adopted by the Supreme Court of Appeals of West Virginia in 1998. While Rule 56 was amended by the Court, effective January 1, 2025, no changes were made that affect this appeal.

new legal arguments, factual contentions, or claims that could have previously been argued"); *Builders' Serv. and Supply Co. v. Dempsey*, 224 W. Va. 80, 85, 680 S.E.2d 95, 100 (2009) (per curiam) ("It is well established that a Rule 60(b) motion does not present a forum for the consideration of evidence which was available, but not offered at the original proceeding."). Issues first raised in a Rule 59(e) motion, which could have been asserted earlier, are not properly preserved for appellate review. *See City of Fairmont v. W. Va. Mun. League, Inc.*, No. 18-0873, 2020 WL 201188, at *6 (W. Va. Jan. 13, 2020) (memorandum decision).

*Id.* at ___ , 912 S.E.2d at 310 (cleaned up).

Additionally, to the extent these arguments in opposition to CAMC's motion for summary judgment are being raised for the first time on appeal, we decline to address the same. "Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." *Shaffer v. Acme Limestone Co., Inc.,* 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999); *see also Whitlow v. Board of Education,* 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) ("Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal.").

Further, in *Jenkins v. Taylor*, No. 23-ICA-71, 2023 WL 7202678, at *2 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision), we noted that pursuant to Syllabus Point 5 of *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966):

An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

*Id.*; *see also* Syl. Pt. 4, *State v. Browning*, 199 W. Va. 417, 485 S.E.2d 1 (1997) ("This Court will not consider an error which is not properly preserved in the record nor apparent on the face of the record."). Because petitioner did not establish that these arguments or objections were made below, we conclude that petitioner has failed to affirmatively establish error.

This rationale aside, we further conclude that petitioner's substantive challenges fail on the merits. To that end, petitioner's arguments on appeal challenge the merits of the circuit court's rulings with respect to the contract, custody, and West Virginia Code § 16-5-10(e) issues. However, in doing so, petitioner largely overlooks the fact that the circuit court's ruling was based upon its determination that *S.U. I* and collateral estoppel operated to bar the litigation of those issues. We cannot conclude that the court erred in this decision.

As stated by the SCAWV:

> Collateral estoppel will bar a claim if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

In that respect, collateral estoppel first requires that the claims in the present action be identical to those present in prior litigation. This factor is easily satisfied. As previously set forth in *S.U. I*, the SCAWV upheld the family court's rulings with respect to the surrogacy contract and custody of the children. The SCAWV also expressly found that petitioner failed to rebut the presumption under West Virginia Code § 16-5-10(e). In the present case, petitioner's foundational arguments on these issues, albeit repackaged, remain the same. In other words, petitioner's arguments continue to manifestly contend that pursuant to a surrogacy agreement, Caren J. is a gestational surrogate who has been impermissibly declared the children's mother and awarded custody, and that petitioner is the children's mother. While petitioner now asserts those arguments against CAMC instead of Caren J., this veiled attempt does not allow petitioner to evade the preclusive effect of *S.U. I*. Moreover, the finality of *S.U. I* is firmly established by the SCAWV's rejection of petitioner's exhaustive attempts to revive these issues in subsequent appeals. Likewise, as evidenced by this Court's prior rulings on petitioner's appeals, we too have reiterated that the conclusiveness of *S.U. I* is beyond reproach.

Similarly, we further conclude that the second and third collateral estoppel factors are readily met. Obviously, *S.U. I* and its progeny establish that there has been a final adjudication on the merits of the prior action. Equivalently, it is more than transparent that petitioner, the party against whom the doctrine of collateral estoppel was invoked, was named as either the petitioner or plaintiff throughout *S.U. I* and its progeny. Furthermore, there is nothing within the procedural history of cases, nor in the appellate record, to suggest that petitioner did not have a full and fair opportunity to these claims. Therefore, we conclude that the circuit court properly concluded that petitioner was collaterally estopped from pursuing these claims.[6]

---

[6] Petitioner also argues that the family court lacked jurisdiction to decide the issues raised in *S.U. I*. This contention also fails for the same reasoning set forth above. Not only does the current petition raise claims previously decided in *S.U. I* but the SCAWV has already found that the family court properly decided this issue. *See S.U. I*, 2019 WL 5692550, at *5 (rejecting petitioner's argument that the family court lacked jurisdiction to decide the matter); *S.U. IV*, 2022 WL 1556113, at *4 (noting petitioner's claim that the

Next, we address the circuit court's denial of petitioner's IIED claims for compensatory and punitive damages. Here, petitioner offers no argument regarding the circuit court's conclusion that petitioner could not satisfy the elements of an IIED claim and, thus, was not entitled to claim-related compensatory damage. Rather, petitioner's arguments are solely focused on the court's ruling on the IIED claim for punitive damages.

On this issue, petitioner claims that Syllabus Points 14 and 15 of *Tudor* state that IIED claims must be presented to a jury before a court may rule on those issues, and therefore the circuit court's ruling was premature. We disagree. First, the circuit court properly recognized that our jurisprudence does not recognize independent causes of action for punitive damages. *See* Syl. Pt. 1, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991). Moreover, after reviewing *Tudor*, this Court concludes that there is nothing within those points of law which stands for the proposition espoused by petitioner, but rather, the plain language of Syllabus Points 14 and 15 establish the *nature* or *type* of the evidence required for a plaintiff to establish a prima facie claim for punitive damages associated with an IIED claim. In fact, in *Travis*, the SCAWV clarified the implications of Syllabus Points 14 and 15 of *Tudor*, stating that "in order for a plaintiff to recover both compensatory damages and punitive damages in an intentional or reckless infliction of emotional distress claim, expert testimony should be used to establish the extent of the plaintiff's emotional injury." *Travis*, 202 W. Va. at 379 n.8, 504 S.E.2d at 429 n.8. Therefore, we conclude that petitioner's specific point of error on this issue fails.[7]

Petitioner also argues that the underlying complaint establishes sufficient physical and mental injuries to maintain the IIED claim for punitive damages. We disagree. The complaint's allegation of injury is not supported by the opinion of an expert witness. Instead, petitioner relies solely upon the allegations contained in the complaint. However, it is well established that "[m]ere allegations are insufficient in response to a motion for summary judgment to show that there is a genuine issue for trial." *Crum v. Equity Inns, Inc.*, 224 W. Va. 246, 254, 685 S.E.2d 219, 227 (2009) (citing *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W. Va. 692, 698 nn. 10, 11, 474 S.E.2d 872, 878 nn. 10, 11 (1996)) (internal citations omitted); W. Va. R. Civ. P. 56(e) (1998).[8] Significantly,

---

family court lacked jurisdiction to decide *S.U. I* to be false and reiterating that the family court properly exercised its jurisdiction to arrive at its determinations in *S.U. I*).

[7] To the extent petitioner's argument was intended to argue that the court's entry of summary judgment deprived petitioner of a jury trial, it is without merit. Syl. Pt. 7, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963) ("The summary judgment procedure provided by Rule 56 of the West Virginia Rules of Civil Procedure does not infringe upon the constitutional right of a party to a trial by jury. . . .").

[8] *See* n.4 supra.

11

petitioner failed to respond to CAMC's motion for summary judgment. Thus, we find no error in the circuit court's dismissal of petitioner's IIED claims.

Petitioner's final argument with respect to Case Number 25-ICA-57 is that there was procedural error in the proceedings below. Namely, petitioner asserts that the circuit court failed to provide procedural due process when it heard CAMC's motion for summary judgment less than ten days after its filing. However, as noted above, petitioner has not shown that any alleged errors were preserved for appeal. The same rationale applies to this issue. In other words, because petitioner has not established that he objected to the timeliness of the court's hearing on the motion for summary judgment, that issue is not properly preserved for appeal, and we decline to consider the same. Therefore, based on the foregoing, we cannot conclude that there is error in the circuit court's March 4, 2022, order granting summary judgment to CAMC and dismissing the 2018 case.

We now turn to Case Number 25-ICA-56. In this case, the issue on appeal is the circuit court's dismissal of the 2020 case pursuant to Rule 41(b) of the West Virginia Rules of Civil Procedure. The circuit court found petitioner had failed to establish good cause for petitioner's failure to timely prosecute the action. We review the court's ruling for an abuse of discretion. *Caruso v. Pearce*, 223 W. Va. 544, 547, 678 S.E.2d 50, 53 (2009).

On appeal, petitioner argues that the circuit court erred in dismissing the case because petitioner's written objection to the court's notice of intent to dismiss established good cause for petitioner's delay in prosecuting the case. On this point, petitioner claims issues in the 2018 and 2020 cases established good cause. In the 2018 case, petitioner cites the delay between the circuit court's grant of summary judgment on September 29, 2020, and entry of the order memorializing that ruling on March 4, 2022, as a reason for inactivity in the 2020 Case. Petitioner also cites the circuit court's failure to enter a scheduling order in the 2020 Case as required by Rule 16(b) of the West Virginia Rules of Civil Procedure and decisions by the SCAWV as justification for the case's inactivity. For these reasons, petitioner asks this Court to remand the matter with directions to the circuit court to reinstate the case for purposes of a jury trial. We decline to do so.

We find no merit in petitioner's contention that the circuit court's delay with respect to entry of the summary judgment order in the 2018 case excused the dormancy of the present case. Other than offering conjecture, petitioner fails to cite to the record or pertinent authority to support this position. *See* W. Va. R. App. P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal."). Moreover, petitioner does not explain how the circuit court's delayed entry of summary judgment in the 2018 case could have continued to justify the failure to prosecute the 2020 matter even after the summary judgment order was entered on March 4, 2022. Accordingly, we reject this argument.

With respect to the scheduling order issue, we acknowledge that petitioner is correct that Rule 16(b) states that court "shall" enter a scheduling order. W. Va. R. Civ. P. 16(b). Likewise, it is true that a prior decision of the SCAWV found that a circuit court's failure to enter a scheduling order may prevent the dismissal of a case for inactivity. *See, e.g.*, *Caruso* at 550, 678 S.E.2d at 56. However, in that case, the SCAWV also considered the fact that the plaintiff had only been inactive for just over one year and that the case was complex. *Id.* Moreover, the SCAWV has determined that a Rule 41(b) dismissal was not an abuse of discretion despite the circuit court's failure to enter a scheduling order. *See Meade v. W. Va. Div. of Corr.*, No. 13-0983, 2014 WL 1672938, at \*4-5 (W. Va. Apr. 24, 2014) (memorandum decision). Under the facts of this case, particularly given the much more extensive delay than occurred in *Caruso*, we conclude that the circuit court's failure to enter a scheduling order was harmless error.

"Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the outcome of the [case]." *Orphanos v. Rodgers*, 250 W. Va. 442, 461, 903 S.E.2d 623, 642 (Ct. App. 2024) (quoting *Reed v. Wimmer*, 195 W. Va. 199, 209, 465 S.E.2d 199, 209 (1995)). As previously established, the 2020 case paralleled the 2018 case with respect to the parties, facts, and causes of action raised. Petitioner acknowledged this in the 2020 complaint. Simply stated, at their crux, the claims in the 2020 case seek to revive issues previously decided by *S.U. I* and its progeny, as well as raise the same or similar causes of action which were appropriately disposed of by summary judgment in the 2018 case. Therefore, it is obvious that petitioner's complaint would be barred by application of res judicata or collateral estoppel and, thus, it would be futile to remand this case to circuit court for entry of a scheduling order or a subsequent ruling on the merits. *See Bickford v. Workforce W. Va.*, No. 22-ICA-276, 2023 WL 7202564, at \*4 (W. Va. Ct. App. Nov. 1, 2023) (memorandum decision) (citations omitted) ("The law does not require the doing of a futile act."). Thus, there was no abuse of discretion in the circuit court's dismissal of the 2020 case.

Accordingly, we find no error and affirm the circuit court's March 4, 2022, and January 31, 2025, orders in Case Number 25-ICA-57, and the court's January 31, 2025, order in Case Number 25-ICA-56.

Affirmed.

**ISSUED:** August 29, 2025

13

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White